### ADMINISTRATION OF ESTATE OF DECEASED ITALIAN.

Probate Court of Stark County.

IN RE ESTATE OF ROCCO BALBO, DECEASED.

Decided, February 19, 1914.

*Estates of Decedents—Administration of, Where the Deceased is a Subject of the King of Italy—Notice—Right of Appointment—Section 10617.*

1. There is no requirement that notice be given to the Italian consul of application for administration on the estate of a deceased Italian subject, where the applicant for letters is a brother of decedent and a minor son of the decedent is in court consenting thereto.
2. An Italian consul has no paramount and exclusive right to appointment to administer the estate of a deceased subject of his government, dying intestate and without next of kin in the jurisdiction of the court, but on the contrary he is relegated to the fourth class by the provisions of Section 10617, General Code of Ohio.

KRICHBAUM, J.

Opinion on motion by Nicola Cerri, Royal Italian vice-consul, to remove Domenico Balbo, administrator of Rocco Balbo, and have himself appointed in his stead.

On the 3d day of November, 1913, one Rocco Balbo, presumably a citizen of Italy, on account of accidental personal injury, died in Stark county, Ohio, without a will, and without any estate whatsoever.

On the 11th day of November, 1913, decedent's brother, Domenico Balbo, accompanied by decedent's minor son, Cona

Balbo, aged eighteen years, made application for letters of administration, for the purpose of adjusting and compromising claim for wrongful death of decedent, Rocco Balbo, for the benefit of the wife and children of decedent under and by virtue of Section 10,772, General Code of the state of Ohio.

On the same date letters of administration were granted on the application made, and on the same date immediately thereafter, application to the court was made for approval of settlement for wrongful death of decedent, for the sum of $1,500, which order was granted and an order of distribution made as follows, to-wit: $93, funeral expenses; $7, probate court costs; $200, attorney fees; $700, to widow of decedent, Angela Balbo; $100, to Cona Balbo; $100, to Brigida Balbo; $100, to Guiseppa Balbo; $100, to Tersea Balbo; $100, to Salvatore Balbo.

Said administrator was ordered to forward said $700 and said $400 to Angela Balbo, widow of decedent, for the benefit of herself and children, to Catalena, Italy, a receipt for which, signed by Angela Balbo, for her herself and minor children, is now on file in this court.

Subsequently, to-wit, on the 24th day of November, 1913, Nicola Cerri, Royal Vice-Consul of Italy, residing in Cleveland. Ohio, filed his motion in this court to revoke said letters of administration, to remove said administrator Domenico Balbo, to vacate and set aside said consent of court to said settlement for wrongful death by personal injury, to hold null and void all action of said Domenico Balbo as administrator, and finally, to issue letters of administration to Nicola Cerri.

Subsequently this cause was argued at length, and elaborate briefs submitted.

It is to be noted that a different state of facts developed on the hearing of the motion, from that claimed originally by the Italian vice-consul in the filing of the motion. Originally it was claimed by the vice-consul that the wife and children of said decedent, were all residents of Italy; whereas, in truth and in fact, Cona Balbo, eighteen years of age, and the oldest son and child of said decedent, was in the United States at the time of the death of decedent, and was in court consenting to the

appointment of his uncle, the brother of decedent, as administrator, as well as the settlement of claim for wrongful death of his father.  On this statement of facts, is the Royal Italian vice-consul entitled to the relief asked for?

It is claimed by the Italian consul, that the letters of administration granted to Domenico Balbo, and all the acts done, or attempted to be done by the said Dominico Balbo as administrator, are void and without effect, for two reasons:

First, because the appointment of said Dominico Balbo was made without any notice whatsoever to the said consular office, as provided by treaty;

Second, because both by the law of nations, and as expressed by treaty stipulations, Dr. Nicola Cerri, as the Royal Italian vice-consul, was entitled to the prior, paramount and exclusive right to administer on the estate his deceased national, Rocco Balbo.

The parts of the Italian treaty germane to a discussion of the subject, under both of the above propositions, is as follows:

Article XVI.  ''In case of the death of a citizen of the United States in Italy, or of an Italian citizen in the United States, *who has no known heir*, or testamentary executor designated by him, the competent local authorities shall give notice of the fact to the consuls or consular agents of the nation to which the deceased belongs, to the end that information may be at once transmitted to the parties interested.''

Article XVII.  ''The respective consuls general, consuls, vice-consuls and consular agents, etc.,   *   *   *   shall enjoy in both countries, all the rights, prerogatives, immunities and privileges which are or may hereafter be granted to the officers of the same grade, of the most favored nation.''

Because of this most favored nation clause, to-wit, Article XVII of Italian treaty, it is contended that Article XIV of the Swedish treaty is applicable, which is as follows:

Article XIV.  ''In case of the death of any citizen of Sweden in the United States or of any citizen of the United States in the Kingdom of Sweden without having in the country of his decease any known heirs or testamentary executors by him appointed, the competent local authorities shall at once inform the nearest consular officer of the nation to which the deceased be-

longs of the circumstances, in order that the necessary information may be immediately forwarded to parties interested.

"In the event of any citizens of either of two contracting parties dying without will or testament, in the territory of the other contracting party, the consul-general, consul, vice-consul general, or vice consul of the nation to which the deceased may belong, or, in his absence, the representative of such consul-general, consul, vice-consul general, or vice-consul, shall, *so far as the laws of each country will permit,* and pending the appointment of an administrator and until letters of administration have been granted, take charge of the property left by the deceased for the benefit of his lawful heirs and creditors, and, *moreover have the right to be appointed as administrator of such estate.*

"It is understood that when, under the provisions of the article, any consul-general, consul, vice-consul, general, or vice-consul, or the representative of each or either, is acting as executor or administrator of the estate of one of his deceased nationals, said officer or his representative shall, in all matters connected with, relating to, or growing out of the settlement of such estates, be in such capacities as fully subject to the jurisdiction of the courts of the country wherein the estate is situated as if said officer or representative were a citizen of that country and possessed of no representative capacity whatsoever."

Coming now to the question of notice, it will be observed that in case of the death of an Italian citizen in the United States, *who has no known heir,* or testamentary executor designated by him, the competent local authorities shall give notice to the consuls or consular agents.

In view of the fact that the eighteen year old son of the decedent was present in the United States at the time of the death of the decedent, and was in court consenting to the appointment of his uncle, brother of said decedent, it does not seem to this court that the Italian consul was entitled to notice by virtue of the Italian treaty, nor does the Italian treaty seem even to intimate that in any event is he entitled to the notice in order that he may become administrator of his deceased countryman, but to the end information may be at once transmitted to the interested parties. So far as the Italian treaty throws any light upon the question, the eighteen year old son, or the brother of the deceased, is quite as competent to transmit information to the

parties interested, as the Italian consul himself.  Nor does the
Italian treaty standing alone, give any prior, paramount and
exclusive right to administer on the estate of Rocco Balbo.

The Swedish treaty, which it is contended should be read into
the Italian treaty, under and by virtue of the most favored na-
tion clause, contained in article seventeen of the Italian treaty,
provides among other things:

"In case of the death of any citizen of Sweden in the United
States, without having in the country of his decease, any known
heirs, or testamentary executor by him appointed, the competent
local authorities shall at once inform the nearest consular officer
of the nation to which the deceased belongs, of the circumstances,
in order that the necessary information may be immediately
forwarded to the parties interested."

It is contended that under this paragraph of Article XIV of
the Swedish treaty, the Italian consul was entitled to notice from
the Probate Court of Stark County, of the death of Rocco Balbo.
Nothing can be plainer  to the mind of this court, that if Rocco
Balbo had had no known heirs in this country, notice would
most certainly have been required.  And the reason is plain
in order that necessary information might be immediately for-
warded to parties interested, for in the event of no known heirs,
or testamentary executor by him appointed, the only avenue of
information would be through the consular office.  Statutes and
contracts are to be construed according to the plain import of
the language.

This court is therefore of the opinion that the presence of the
eighteen year old son of Rocco Balbo, together with his uncle,
a brother of the decedent, in court dispensed with the necessary
notice to the vice-consul, by virtue of the plain language con-
tained in the treaty, both with Sweden and with Italy.

It is contended by consul that this contention is not well
taken, because without notice, the estate of the decedent would
not be conserved and protected for the benefit of his legal heirs
and creditors.  He contends there can be no dispute about this,
because he says, the phrase, "known heir," implies "the reason-
able and necessary qualification of a *competent* known heir."

It may be asked, competent for what? Competent for the administration of the estate? Competent for the purpose of transmitting notice and information to the parties interested? Competent to be an heir and to participate in the distribution of the estate? This court knows of no law by which qualifying words can violently be read into a contract of any kind.

It is contended that any other construction of the treaty's provisions would be destructive of and do violence to the manifest intention of the high contracting parties. In answer to this claim, it may be said, that the intention of the high contracting parties, is contained in the reasonable and common.import of the language used, and this is the method of construction which is followed by the Supreme Court of the state of Ohio.

This court does not agree with the contention that where a known heir eighteen years of age, is present in court and consents that his uncle, a brother of decedent, be appointed administrator, that any safe-guards designed for the protection and conservation of the property of aliens, is cast aside, but such situation is the wisest and best of all safe-guards, and this court can not conceive how notice to the consuls, or his intervention in any way could aid in a proper administration of the estate.

It is further urged in support of the contention that *known heir,* means *competent known heir,* by suggesting an extreme probable condition, in language as follows, to-wit:

"Suppose instead of an eighteen year old son being present, we had a child of two years, would it be contended that the presence of such child would dispense with mandatory requirement for notice, or suppose instead of a minor heir, an insane or imbecile heir were present, would it be maintained that under such circumstances notice would not have to be given?"

The answer to this extreme and violent supposition, is the language cited by the attorney for the consul, 100 U. S., p. 483:

"But a court can not add to, alter or amend a treaty for any purpose, by inserting words or clauses."

Moreover, this court is competent to appoint guardians for minors and lunatics, and it is not claimed that a consul could act in that capacity.

It may further be said in answer, that extreme and violent suppositions would do violence to most any statute or contract.

A liberal construction of treaties makes consular officers, aids and helpers to courts in the administration of estates, and presumes that courts will do right and justice under all circumstances.

The Spanish treaty is cited in support of the contention that notice was mandatory in the case at bar, to-wit:

"Consuls shall have under the laws of their country,    *    *    * *so far as compatible with local laws,* the right of representing the absent, unknown or minor heirs, next of kin, or legal representatives of citizens or subjects, who die within their consular jurisdiction."

It will be noted that the exercise of the rights enumerated are subject to the *local laws,* that is to say, where the local laws are plain and adequate, there may be no need for the exercise of the right of representation, but in any event it is not plain to the court that the right of representing minor heirs here, means the right to represent the decedent as administrator. It might mean the right to represent the minor heir as guardian, or as next friend, or it might mean to take possession of the property of the minor until a guardian be appointed, or to take charge of the property of the estate until an administrator be appointed, provided, always, it is in harmony with local laws, or it might mean minor heirs, next of kin, etc., *who are absent,* because the language is "the absent minor heirs," etc. Whatever may be the import of the right to represent the minor heir, it throws no light upon the question of mandatory notice to a consul, when the minor eighteen years of age and the uncle, one of the next of kin, is in court, and where local laws are specific and effective to give all adequate relief.

The further claim is made, that the statutes of Ohio require all parties entitled to administer an estate of a decedent, to have notice; that therefore the consul is entitled to notice. This of course begs the question, and assumes that the Italian consul in the case at bar has a prior, paramount and exclusive right to be appointed administrator of Rocco Balbo. If this contention is

correct, then a discussion of the question as to whether notice is required in this case is futile and nugatory.

It is therefore the conclusion of the court, that under the facts of this case, and applying the rules of construction to the treaties ordinarily applied to contracts, and the authority cited by counsel in 100 U. S., 483, no notice was required to be given to the Dr. Nicola Cerri, the consular officer for the Kingdom of Italy, for northern Ohio.

SECOND PROPOSITION. Has the Italian vice-consul, Dr. Cerri, the prior, paramount and exclusive right to be appointed administrator of estate of Rocco Balbo, under the facts in this case?

A long list of authorities are cited as to treaty power, treaty interpretation and treaty construction, and which contained a correct statement of the law in that regard.

It is not claimed, nor can it be claimed, that the Italian treaty gives the right to Dr. Cerri, to be appointed administrator, but it is claimed, that by virtue of the most favored nation clause contained in Article XVII of the Italian treaty, the treaties of other nations ought to be read into the Italian treaty; notably the provisions of the treaty with Sweden. Moreover, it is claimed, that the treaties with certain other notions, to-wit, Paraguay, Argentine Republic and Spain, are likewise to be considered, so far as they affect the question at issue.

It will be observed on a careful examination of the treaties of the most favored nations, as compared with the treaty with Italy, that they all contain words of limitation upon the rights granted therein, with respect to the settlement of estates of deceased nationals.

Paraguay.—"So far as the laws of each country will permit."

Spain.—"So far as compatible with the local laws."

Argentine Republic.—"Conformably with the laws of the country."

Sweden.—"So far as the laws of each country will permit."

It is apparent, therefore, that it was the intention of the high contracting parties, of these most favored nations, that local laws are not to be lightly set aside in the construction of these treaties, but that it was rather the intention of the high con-

tracting parties, to make the local laws of the various states of this nation, ancillary and fruitful and adaptable to facilitate and aid in the settlement of estates of deceased nationals dying in this country.

The Supreme Court of California in commenting upon this precise question, in the case of *Estate of Ghio,* 157 California, p. 557, affirmed by the Supreme Court of United States, says:

"It is obvious that such intent (to give absolute right to consuls to administer), is not to be lightly imputed to the Federal Government, and that it can not be allowed to exist, except where the language used in a treaty, plainly expresses it, or necessarily implies it."

In 120th Minnesota, p. 122, *Austro-Hungarian Consul* v. *Westphal,* decided December, 1912, it was held after considering under the most favored clause of Swedish treaty, that the language contained in that treaty, "so far as the laws of each country will permit," with respect to the administration of the estates of deceased nationals dying in Minnesota, is expressly subject to the conditions imposed by the laws of Minnesota. On page 141 of this well considered case, the court says: "We can not think in the absence of clearly expressed intention so to do, that the Federal Government intended to take the matter of administration of foreigner's estate entirely out of the control of the states."

If in consideration of the precise question involved in this case, by the Supreme Court of Minnesota, it of necessity held in arriving at it's conclusions, to-wit:

"That a deceased national dying in Minnesota, is expressly subject to the conditions imposed by the laws of Minnesota."

That the language in the treaty with Sweden did not plainly express, or necessarily imply, that a consul or vice-consul, or any of his subordinates, or agents, had the prior, paramount and exclusive right to be appointed administrator of a deceased national.

In arriving at this conclusion, that court must evidently have considered and construed the language, "moreover shall have

Estate of Balbo.        [Vol. 16 (N.S.)

the right to be administrator.'' It is the contention of Dr. Cerri, that this language is in nowise modified or affected by the qualifying words in the same paragraph of the Swedish treaty, ''So far as the laws of each country will permit.''

It will be found on examination, that the language relied upon, to-wit, ''moreover shall have the right to be appointed administrator,'' is contained in the last paragraph of Article XVI of the treaty with Sweden.

It will be further observed, that the entire paragraph is one continuous sentence. If the language relied upon were in a different sentence, or in a different paragraph, it might then well be claimed that it is in no sense modified by the qualifying words, ''so far as the laws of each country will permit.''

It is the opinion of this court, that the canons of grammatical and rhetorical construction brings this last clause under the qualification of the words, ''so far as the laws of each country will permit.'' Moreover applying the rules of thought analysis to this single sentence, it would certainly seem strange that the right to temporary possession until appointment of an administrator, should have qualification, and in the same sentence, the right to be appointed administrator, should be left without qualification; or to put in differently, if the consul has absolute right to be administrator, then why qualify his rights to have charge of the property until letters of administration be granted, forsooth, to himself, for certainly the right to administer includes the right to possession and control of the property, and to have charge of it for the benefit of the lawful heirs and creditors of the deceased. This reasoning is sound on the well known axiom of geometry, ''that the whole is greater than any of its parts.'' Is it not therefore apparent that the construction of this sentence (the whole of the paragraph), in the light contended for by Dr. Cerri, does violence to good sense and reason?

Is there no other hypothesis upon which this language can be explained, preserving its unity of thought, and composition, and if so, according to the canons of construction, ought it not to prevail?

Section 10617, General Code of Ohio, provides as follows:

"Administration of the estates of persons dying intestate, shall be granted to some one or more persons hereinafter mentioned, *who shall be residents of this state,* and they be respectively entitled thereto, in the following order, to-wit:" * * *

Consuls and consular agents are not citizens of the United States, and therefore, not of the individual states, and independent of the provisions of the various treaties, and especially in this case, the Italian and Swedish treaty, have no right to be appointed administrator in the state of Ohio, as is apparent from the above section of statute quoted. It will also be conceded, that in common law, they have no right in the state of Ohio, to be appointed as administrators.

A consul is constructively a resident of his own country, and has no standing in our courts, except as it is given him either by statute or by treaty contract.

Now in order that a consul may have standing in a court, he must be given the right to act as administrator, but that right may be conferred right as any other political right, and must be conferred before he can act as administrator.

For instance, the treaty with Sweden, which is claimed to be the most favorable to the consul, provides that the consul, shall, "so far as the laws of each country will permit," and pending the appointment of administrator, and until letters of administration have been granted, take charge of the property left by the deceased, for the benefit of his lawful heirs and creditors.

Suppose nothing further had been added, is it not apparent that the language, "so far as the laws of each country will permit," would prevent his acting as administrator, because the statute of Ohio, says, "administration of the estate of an intestate, shall be granted to some one or more persons, who shall be residents of this state." Now to make it possible for him to be qualified as an administrator, to give him representative capacity and in order to bring him within the provisions, "so far as the laws of each country will permit," the words were added to the treaty, "moreover have the right to be ap-

pointed as administrator of such estate." Clearly therefore, the words, "and moreover have the right to be appointed as administrator," are simply words of qualification of the consul, permitting him to be appointed administrator, otherwise he would be barred by reason of non-citizenship, or non-residence; that is to say, a political right has been conferred upon him, by the language, "moreover shall have the right to be appointed administrator," simply qualifying him with a right, not exclusive, prior and paramount, to be administrator of the estate of a deceased national. That is to say, "moreover shall have the right to be appointed administrator," are not words of limitation upon the authority of the court, requiring the appointment of the consul to the exclusion of some other person, but are words of qualification, placing the consul on the eligible list for appointment of administrator, thus bringing him within the limitations of the laws of this country and state.

This interpretation and construction of the treaty with Sweden, gives cogency and clearness to the sentence constituting the second paragraph of Section XIV. It accords with the theory and decision of the Minnesota Supreme Court, and of *Rocco* v. *Thompson*, 223d U. S., page 317. Moreover it is to be observed that this theory of interpretation of the effect of the words "moreover shall have the right to be appointed as administrator," of such estate, is clarified and emphasized by the paragraph of Article XIV of the Swedish treaty immediately following, which says in substance:

"That when such consul is acting as executor or administrator, he shall be in such capacity, as fully subject to the jurisdiction of the courts wherein the estate is situated, as if said officer were a citizen of this country, and possessed of no representative capacity whatsoever."

In other words, no discrimination shall be made against him because he is a foreigner or representative of a foreign government, but that this political right is conferred upon him with all its obligations, rights and privileges in common with other citizens of the United States, simply qualifying him as a proper person to receive letters of administration, not to the exclusion

of others, but to have the qualifications to act in common with other citizens of the United States, when the exegencies of the case demand it, and in order not to do violence to the local laws, and in order that the state laws may be thoroughly subordinate to the treaty rights conferred upon aliens.

It is the conclusion of the court therefore, on the theory that the most favored clause in the Italian treaty, carries the provisions of the Swedish treaty (which is still a doubtful question), that it was not the intention of the high contracting parties in the treaty with Sweden, to take away from the state of Ohio, or any other state in the United States, the right of local administration provided by law upon the estates of deceased nationals, and commit the same to the Italian consul, to the exclusion of those entitled to administer as provided by Section 10617 of the General Code of Ohio, and that Dr. Cerri, vice-consul of Italy, is not entitled to the prior, paramount and exclusive right to administer on the estate of his deceased national Rocco Balbo; that under Section 10617, General Code of Ohio, the appointment of an administrator must be made, first, to the husband or widow; second to next of kin; third, to creditors; fourth, to such persons as the court shall think fit; that Dr. Cerri is relegated to the fourth class, for the reason that the laws of this country permit him to be appointed under this class.

And the court having heretofore appointed decedent's brother, Dominico Balbo, at the request of the eighteen-year old son of the deceased national, to-wit, Cona Balbo, and which appointment it finds is regular and in conformity to the statute, and said estate having been fully administered and order of distribution made before the filing of the motion of Dr. Cerri herein, and eleven hundred dollars of the fifteen hundred dollars having been transmitted to Italy to the widow and four of the minor children, and the receipt returned duly signed and authenticated, the motion filed herein by Nicola Cerri, Royal Italian vice-consul, is overruled, and the relief asked for therein denied, the said Nicola Cerri, Royal Italian vice-consul, to pay the costs taxed herein at the sum of five dollars, and exception will be noted in favor of Dr. Nicola Cerri.